UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

In re

CHARLES K. BRELAND, JR.                                    Case No. 09-11139-11-MAM

       Debtor

**ORDER DENYING MOTION OF INTERNAL REVENUE SERVICE TO AMEND ITS PRIORITY CLAIM AND DECLARING THAT ANY RIGHTS TO AMEND ITS GENERAL UNSECURED CLAIM REMAIN INTACT AND GRANTING MOTION TO COMPEL ON A LIMITED BASIS**

Lynne M. Murphy, Tax Division, U.S. Department of Justice, Washington, D.C., Attorney for the Internal Revenue Service
Robin B. Cheatham, New Orleans, LA, Attorney for the Debtor

      This case is before the Court on the Motion of the Internal Revenue Service to amend its claim in Charles Breland's bankruptcy case. In conjunction with that motion, the Internal Revenue Service also has filed a motion to compel Mr. Breland to respond to certain discovery it has propounded. This Court has jurisdiction to hear the motions pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. These matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2) and the Court has the authority to enter final orders. For the reasons given below, the Court is denying the IRS's motion to amend its priority claim, declaring its right to amend its general unsecured claim remains intact, and is granting the motion to compel on a limited basis.

FACTS

      The parties do not disagree about the essential facts. Both have provided very detailed statements of the facts in their pleadings. Charles Breland filed a chapter 11 bankruptcy case on March 11, 2009. He confirmed a plan on December 10, 2010. The confirmation order was not appealed and is final. The plan was substantially consummated on December 27, 2010. Breland

1

owed taxes to the IRS at the time of filing and the IRS filed its first proof of claim on April 26, 2009. It amended the claim four times before confirmation to deal with returns filed during the case. At confirmation, it reinstated its third amended claim, filed October 4, 2010. That claim stated that Breland owed the IRS $2,020,697.01. Of that claim, $671,318.55 was for an unsecured priority claims for income taxes from 2004-2009. The remaining $1,349,378.46 was a general unsecured claim for "penalty to date of petition on unsecured priority claims" for the failure of Breland to file his tax returns on a timely basis.

The IRS objected to confirmation of Breland's Plan, but withdrew its objection when the debtor agreed to a Consent Order that dealt with issues between the parties that were not covered by the plan. The Consent Order was executed by the parties and signed by the court on December 17, 2010. It provided:

> 2. The IRS claim totals $2,020,697.01 and consists of unsecured priority tax claims totaling $671,318.55 ("IRS priority tax claims"), and unsecured general claims totaling $1,349,378.46 ("IRS unsecured general claims").
>
> 3. The IRS priority tax claims of $671,318.55 shall be allowed in full and paid in accordance with the terms of §§ 2.2 and 5.2 of the Confirmed Ohana Cabo LLC's Chapter 11 Plan of Reorganization As Amended ("Plan"). See Docs. 462 and 462-1.
>
> 4. The debtor shall preserve his existing objection to the IRS unsecured general claims pursuant to § 6.1 of the Plan, and said claims shall be deemed disputed within the meaning of § 3.2.2 of the Plan until resolution of such disputed claims through either settlement or adjudication to a Final Order (as defined in § 1.18 of the Plan). To the extent such disputed claims become Allowed (as defined in § 1.4 of the Plan), payment of said Allowed claims shall be made in accordance with §§ 3.2.2 and 6.2 of the Plan.
>
> 7. The Plan shall be modified to read, as follows:
>
>> Plan Default Relating to Taxes. Upon any default under the Plan relating to the non-payment of any Administrative Expense, Priority Tax Claims or Unsecured Claim, the

2

> administrative collection powers and rights of the United States shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of Notice of Federal Tax lien and the powers of levy, seizure, and sale under Title 26 of the United States Code.
> See Plan, at § 11.9 (formerly § 11.8 (prior to amendment)).

The Plan provided that an "allowed" claim was a claim "that has been allowed pursuant to § 502 of the Bankruptcy Code . . . or the Claim or applicable portion thereof that has been allowed pursuant to the Plan." Plan, § 1.4. The Plan designated a specific amount to pay the State of Alabama and federal income taxes of Breland that were priority taxes and the IRS portion of that sum was $671,318.55. Plan, § 1.36. Holders of Unsecured Claims that "are disputed in whole or in part, and the Debtor's objection to such Unsecured Claims, as filed in this Case, are preserved." Plan, § 3.2.2. Section 11.14 of the Plan states that its provisions "bind all creditors, whether or not they vote to accept the Plan." On December 27, 2010, the IRS was paid $617,318.55 in full payment for the priority tax claims. The sum of $ 1,349,378.46 has been escrowed for payment of the unsecured tax claims when determined. That sum is the entire amount that the IRS indicated was owed in its final proof of claim. Other creditors were paid millions of dollars at consummation and allowed unsecured claimants, exclusive of the IRS, were paid over $3,000,000.

After confirmation, the IRS propounded discovery that it needed to prepare for a hearing set on the debtor's objection to the IRS's claim that Breland owed $1,349,378.46 for penalties and interest for failure to file timely tax returns in 2005-08 and for late payment penalties for 2004. Debtor had objected to the claim on September 27, 2010 on the grounds that Breland "had reasonable cause for not paying the taxes on time." 26 U.S.C. § 6651(a)(1).

The IRS sought discovery to determine whether Breland had reasonable cause for his failure to pay. Breland asserts, at least in part, that his failure was due to money problems that

3

arose due to Hurricane Katrina. As a developer of real estate on the Gulf Coast, the hurricane made it impossible for him to pay timely. The IRS would need to show, at least in part, that he had sufficient income to pay and/or he would not have suffered an undue hardship if he had paid. *E.g., Moran v. U.S.*, 2010 WL 744299, * 4 (C.D. Ill. February 25, 2010) (stating that reasonable cause might require a showing that the taxpayer "used ordinary business care and prudence" or that the taxpayer "would have suffered undue hardship"); *Greenwald v. C.I.R.*, 102 T.C.M. (CCH) 373, 2011 WL 4550129, * 5 (T.C. 2011) (stating that "reasonable cause [may] arise as a result of factors beyond a taxpayer's control"). Therefore, the IRS sought information about Breland's income and expenses and cash flow for the years in question. In the discovery, the IRS received documents from numerous banks that the IRS alleges show that Breland could owe millions more in priority taxes -- $45.2 million in fact. The IRS believes Breland substantially underreported his income. The IRS freely admits the $45.2 million is higher than it believes the final claim will be because it does not have all deductions and other items that might lower the tax amounts. The IRS asserts that it should be allowed to amend its priority tax claims for 2004-2009 to reflect its discovery. The documentation requested, even if the IRS were allowed to amend, due to the number of companies and projects Breland was involved in would be voluminous and time consuming to provide.[1]

LAW

The IRS bears the burden of proving that its amendment of its claim should be allowed at this time. Knowledge of the "compelling circumstances" that would allow the amendment, or, the reasons that res judicata or waiver or estoppel do not apply are in its hands. The standard of

---

[1] Breland may have further deductions he can use as to his 2004-2009 taxes due to a large capital loss carryback. Breland must file amended returns to take advantage of this loss. This issue is separate from the issue of Breland's original returns filed for 2004-2008 which are at issue in this ruling. Whether a loss carryback may be used, or not, by Breland is between the IRS and Breland and not a part of this ruling.

4

proof is a preponderance of the evidence. The court found no cases that required a higher standard.

There are 4 issues to address. First, is the Plan res judicata as to the claims of the IRS or any part of them? Second, if it is not, is the IRS estopped from amending its claims or has it waived the claims? Third, has the IRS met the standard for amendment of its claims or any part of them under the 11th Circuit law? Fourth, should the motion to compel be granted in whole or in part? The court will address each issue separately.

A.

The IRS asserts that its claims have never been finally adjudicated and therefore there is no res judicata effect by the Plan as to its claim. Breland asserts that the Plan clearly bound all parties when the confirmation order was final, including the IRS. It is necessary to discuss the priority claims and general unsecured claims separately.

The Plan of Reorganization in this case clearly bound the IRS and the debtor as to the priority debt owed by Breland for 2004-2009. The plan provided that claims were allowed by the plan. But even more importantly, the Consent Order that the IRS and Breland signed said that the priority claims "shall be allowed" in accordance with the plan. "Allow" is a defined word in the plan and and it means that the claim has been adjudicated. The Consent Order then stated that the IRS could exercise its right to assess only if there was a plan default. Clearly that power was given up in the Consent Order and plan, or there would have been no need for this provision. "[C]onfirmation of a reorganization plan is equivalent to a final judgment in an ordinary civil action, which extinguishes the claim and substitutes for it a judgment, which defines the new obligations of the parties. The effect of the confirmation of the plan . . . is that 'each claimant gets a 'new' claim, based upon whatever treatment is accorded to it in the plan

5

itself.'" *IRT Partners, et al. v. Winn-Dixie Stores, Inc. (In re Winn-Dixie Stores, Inc.*), 639 F.3d 1053, 1056 (citing *Holstein v. Brill*, 987 F.2d 1268, 1270 (7th Cir. 1993)).

The Plan stated that unsecured claims not specifically agreed to were "preserved." The Consent Order stated that the debtor preserved "his existing objection to the IRS unsecured general claims . . . and said claims shall be deemed disputed." The unsecured claims specifically were not to be considered resolved until there was "an adjudication to a Final Order." The court concludes that there is no final adjudication of the unsecured claims.

The IRS asserted that the claims could not be bifurcated into two parts. Either the entire claim for a tax year was not final or all of it was. However, in bankruptcy, the claims of taxing authorities are divided into separate claims and accorded very different treatment according to their status. Tax claims may be secured, priority or unsecured. Secured claims are paid in full from the collateral to which they attach, or, are paid in full by payments over time with interest. 11 U.S.C. § 1129(b)(1)(A). Priority claims are paid in full within five years of the filing of a bankruptcy case. 11 U.S.C. § 1129(a)(9). Unsecured claims are paid after all other claims, except those of equity security holders, and may be paid nothing or in full. 11 U.S.C. § 1129(b)(2)(B). Even if not paid at all or paid a minimal distribution, unsecured claims can be discharged. 11 U.S.C. § 1141. This case did not attempt to pay part of the priority taxes and leave some of them for later resolution. The entire priority tax claim was paid in full. The court could find no cases on point. However, the court concludes that the parties agreed to separate the claims in their Consent Order. The plan and Consent Order agree that the priority claims are "allowed" and the unsecured claims are not. The Consent Order divides the IRS debt into 2 claims – priority and general unsecured. Regardless of whether there is case law on point, the parties' agreement is binding. The agreement would provide the debtor with the right to assert

6

issue preclusion as to the tax amounts for 2004-2009 as well, even if the claims were not found to be capable of bifurcation. The Eleventh Circuit Court of Appeals has indicated that collateral estoppel has four requirements, all of which are present in this case.

> There are several prerequisites to the application of collateral estoppel: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*CSX Transp., Inc. v Brotherhood of Maintenance of Way Employees*, 327 F.3d 1309, 1317 (11th Cir. 2003); *In re Bush*, 232 Fed. Appx. 852, 854 n.1 (11th Cir. 2007) (not published).

B.

Breland asserts that even if the Plan is not res judicata as to the IRS claims, the IRS should be precluded from asserting new claims now due to waiver or estoppel. Waiver is the voluntary relinquishment of a known right or claim. *Garfinkle v. Weil*, 672 F.2d 1340, 1347 (11th Cir. 1982). If a party voluntarily participates in a chapter 11 case, the creditor waives its right to later amend its claim or position. It is bound by the plan. *In re New River Shipyard*, 355 B.R. 894, 910-11 (Bankr. S.D. Fla. 2006). The doctrine of equitable estoppel allows "'a person's act, conduct, or silence when it is his duty to speak,' to preclude him from asserting a right he otherwise would have had against another who relied on that voluntary action." *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1317 (4th Cir. 1996) (citing Black's Law Dictionary 538). "The rule is designed to protect any adversary who may be prejudiced by the attempted change of position." *Id*. (citing *Guinness PLC v. Ward*, 955 F.2d 875, 899 (4th Cir. 1992)). The court concludes that the IRS is also bound to its proof of claim as to the priority taxes based on waiver and estoppel. Breland and all of the other creditors relied on the IRS position on the claims in resolving the highly contentious plan proceedings. The IRS's claim, as well as others, was

7

necessarily resolved at a certain amount to make the Plan feasible. There is no question that Breland and others relied on the IRS position. The IRS freely entered into the Consent Order and withdrew its objection to the Plan as well and waived any right to claims that were not consistent with those actions.

C.

If the priority tax claim of the IRS is final, should the court allow the IRS to amend it anyway? The test to be applied to whether an amendment should be allowed is whether there are "compelling circumstances." *In re Winn-Dixie Stores, Inc.*, 639 F.3d 1053, 1056057 (11th Cir. 2011) (citing *In re Int'l Horizons, Inc.*, 751 F.2d 1213 (11th Cir. 1985)). The factors the Court looked at in those cases to make its determination were

> (1) whether the debtors and creditors relied upon . . . earlier proofs of claim or whether they had reason to know that subsequent proofs of claim would be filed pending the completion of an audit; (2) whether other creditors would receive a windfall by the court's refusing to allow amendment; (3) whether [there was an intentional or negligent delay] in filing the proof of claim stating the amount. . . due; (4) the justification for . . . failure to file for a timely extension to the bar date; and (5) whether equity requires consideration of any other factors.

*Int'l Horizons*, 751 F.2d at 1218 (citing *Miss Glamour Coat Co.*, 80-2 U.S.T.C. ¶ 9737, 1980 WL 1668 (S.D.N.Y. Oct. 8, 1980)).

Breland and his numerous creditors all relied upon the agreement reached with the IRS based upon the proof of claim filed and the Consent Order. There was no evidence that anyone (except perhaps the IRS) thought that any of the priority claims could be amended later. The other creditors received distributions under the Plan. The Plan paid 100% to all creditors. The Plan provided that the IRS could only assess taxes for the years covered by the Plan if there was a default under the Plan. If a $45 million tax debt were allowed to be assessed now, either the plan would have to somehow be undone, which could prove impossible due to the sale of assets that

8

Case 09-11139    Doc 604    Filed 12/20/11    Entered 12/20/11 16:26:01    Desc Main
Document      Page 8 of 11

was an integral part of it, or, Breland will be left with no assets and a tax debt to pay that he believed he had compromised and paid. "[A]mendment of a creditor's claim after confirmation of a plan can render a plan infeasible or alter the distribution to other creditors." *In re Winn-Dixie, Inc.*, 639 F.3d at 1056. This certainly would be the situation in this case. The IRS willingly withdrew its objection to the plan and did not seek any extension of time to file amended claims.

The IRS argues that the amendment must be allowed to protect the public fisc and because Breland should not be allowed to avoid his tax debts. However, the IRS's position is based upon its own view of what the records it has received prove. Breland was a developer on the Gulf Coast and elsewhere during a time of incredible activity in real estate. He was involved in numerous land and development deals over the 5 year period in question. The real estate market precipitously declined, Hurricanes Ivan and Katrina occurred, and companies and properties he was involved in came and went, were bought and sold, and filed bankruptcy. It is just as possible that the issues raised by the IRS are without merit. Transferring funds from one project to another and one account to another would not be unusual for such an individual. Adding up all of the transfers could be double or triple counting. In other words, the IRS is assuming that Breland is a tax evader in making its arguments but the court cannot take that position as true.

Based upon the fact that the IRS willingly agreed to allow Breland's priority claims, withdrew its objection to the Plan, and accepted payment for the priority claims as agreed upon, the priority claim should not be allowed to be amended. Based upon the difficulty of undoing the plan and the prejudice it would cause to all other parties in the case and based upon the time that the IRS had to review and audit all of the returns before confirmation, the court concludes

that there are insufficient compelling circumstances to allow amendment of the priority claim. The court also believes that the Consent Order displays that the parties knew how to prevent finality as to a claim because the parties did that in regard to the general unsecured claim. The contrast between the treatment of the two types of claims in the Consent Order makes the intent of the parties abundantly clear.

The unsecured claim has not been finally adjudicated and can be amended. The parties "preserved" the general unsecured claim objections and did not finally allow the claim. The unsecured claim is for penalties that relate to the 2004-2008 tax years. Since the court is concluding that the priority claims for those years are final, the only issue it would appear would be whether the maximum penalty and interest for late filing can be assessed or some lesser amount.

D.

In light of the fact that the priority tax claim is finally determined and only the unsecured claim remains unresolved, should the motion to compel be granted? The motion to compel is granted to the extent that the IRS is seeking relevant information about ability to pay. What Breland spent his available income on is relevant. If he had the capacity to pay his taxes but for unnecessary or improper or unreasonable expenses, discovery about those matters would be appropriate. With the finality of the priority tax payments, the IRS and Breland must start from the fact that the tax return amounts of income are valid. In light of this ruling, the court will set a further hearing on the motion to compel. The parties are instructed to discuss discovery issues prior to the hearing and attempt to resolve the issues, narrowing what was requested before. Whatever issues remain will be discussed at the hearing.

CONCLUSION

The court concludes that the IRS must honor the agreement it made at confirmation. The IRS now has second thoughts about that agreement. However, it is too late. The court does not condone parties evading taxes, if owed. However, even if what the IRS alleges is true, and Breland owes more taxes for the years in question, the IRS had to act to protect its rights before confirmation. It knew how to protect its rights. The Consent Order exemplifies that. It preserved the unsecured claim. The motion to amend must be denied.

IT IS ORDERED:

1. The motion of the Internal Revenue Service to amend its priority claim is DENIED and any rights to amend its general unsecured claim are intact;

2. The motion of the Internal Revenue Service to compel production of documents is GRANTED, consistent with the ruling on the motion to amend; and

3. Any remaining discovery issues under the motion to compel are set for hearing on **January 31, 2012 at 8:30 a.m**. in Courtroom 2, U.S. Bankruptcy Court, 201 St. Louis Street, Mobile, Alabama.

Dated: December 20, 2011

MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE

11

Case 09-11139   Doc 604   Filed 12/20/11   Entered 12/20/11 16:26:01   Desc Main
Document      Page 11 of 11