IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re:  Case No.: 09-11139-JCO
CHARLES K. BRELAND,  Chapter 11
Debtor.

## ORDER

This matter is before the Court on Debtor Charles Breland's Motion to Recover Attorneys' Fees and supporting brief (Docs. 754, 911), and the United States' (hereinafter referred to as "IRS") Objection thereto and supporting brief. (Docs. 774, 912). Debtor's Motion was filed on January 17, 2014. (Doc. 754). On May 2, 2014, the IRS filed its Opposition brief to Debtor's Motion. (Doc. 774). In October of 2015, the undersigned took the bench and this matter was set for status on November 2, 2015. (Doc. 889). The status hearing was held, and the parties were ordered to file a joint stipulation of fact and supporting briefs on the legal elements only of 11 U.S.C. § 7430, which they did on or about December 22, 2015. (Docs. 910, 911, 912). A hearing was held on these matters on January 14, 2016. On behalf of Debtor were attorneys Robin Cheatham and Robert Galloway, and on behalf of the IRS was attorney Lynne Murphy. At the conclusion of the hearing, the parties were ordered to file proposed findings of fact and conclusions of law not later than April 1, 2016, which they did. (Docs. 925, 926). The Court then took this matter under submission.

This case has a tortured history with the Court. It has been presided over by three different bankruptcy judges, Judges Margaret A. Mahoney and William S. Shulman, both of whom have retired from this Court, and it is now before the undersigned. Having considered the motions, briefs, objections and overall record before it, the Court concludes that Debtor's Motion to Recover Attorneys' Fees and Costs or As Offset is due to be DENIED.

In the wake of *Stern v. Marshall*, 564 U.S. 462 (2011), which left unresolved the question of whether bankruptcy courts had jurisdiction to enter final orders based on the parties express or implied consent in actions that can exist apart from the bankruptcy itself, *Wellness Int'l Network, Ltd. v. Sharif,* 135 S.Ct. 1932 (2015), sought to resolve that question. The Supreme Court's analysis in *Wellness* began with the basic principle that "adjudication by consent is nothing new," *id.* at 1942, and concluded that "[a]djudication based on litigant consent has been a consistent feature of the federal court system since its inception . . . [and] poses no great threat to anyone's birthright, constitutional or otherwise." *Id.* at 1947. "Congress could choose to rest the full share of the Judiciary's labor on the shoulders of Article III judges, [b]ut doing so would require a substantial increase in the number of district judgeships. Instead, Congress has supplemented the capacity of district courts through the able assistance of bankruptcy judges. So long as those judges are subject to control by the Article III court, their work poses no threat to the separation of powers." *Id.* at 1946.

Holding that consent need not be express, but may also be implied by the parties' conduct the Supreme Court based this conclusion on 28 U.S.C §§ 157, 636(c), which authorizes bankruptcy and magistrate judges to hear and determine certain proceedings with the consent of the parties. *Id.* at 1947-48. "Applied in the bankruptcy context, that standard possesses the same pragmatic virtues – increasing judicial efficiency and checking gamesmanship- that motivated [its] adoption of it for consent-based adjudications by magistrate judges." *Id.* at 1948. However, for implied consent to exist, it must be knowing and voluntary. That is, whether counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the non-Article III adjudicator. *Id.*

This Supreme Court historical analysis is relevant to these proceedings because Debtor's Motion to Compel under § 7430 raises a non-core matter outside this Court's jurisdiction. *See In re Rasbury,* 24 F.3d 159, 163-64 (11th Cir. 1994). The parties have not expressly consented to a final ruling on Debtor's Motion; however, based on their conduct, and in the interest of judicial economy and the need for a final ruling on this issue so the remainder of the case may proceed, this Court finds that the parties have impliedly consented to this Court's jurisdiction. Debtor has not raised the issue at all, and the IRS, in a footnote, merely noted without objecting that this is a non-core proceeding in which the bankruptcy court may not enter a final order. (Doc. 912 at 1, n. 3). Failing to raise a proper objection to this Court's jurisdiction and actively appearing before the Court at various hearings, the parties have impliedly consented to this Court's jurisdiction. *See Matter of Texas Gen. Petroleum Corp.,* 52 F.3d 1330 (5th Cir. 1995)("[a] party who fails to object to a bankruptcy court's assumption of core jurisdiction consents to that court's entry of final judgment . . . . [such an objection] at th[e appellate] stage more closely resembles an afterthought than a bona fide objection").

As required by *Wellness*, the Court finds that the parties' implied consent is knowing and voluntary, as they are not unsophisticated players on the bankruptcy field, this case has been ongoing for nearly six years, and, the issue of core versus non-core has been addressed in many substantive orders handed down from this Court. This Court has held at least two hearings on this Motion alone, both of which counsel for the parties participated in without raising jurisdiction. Thus, this Court treats the parties' conduct as implied consent to its jurisdiction and enters the following final order.[1]

---

[1] To the extent that this Court is lacking jurisdiction to enter the present order, the Court notes that in the District Court Standing Order of Reference referring all Title 11 matters to the bankruptcy judges for this District, the District Court "may treat any order of the bankruptcy

FINDINGS OF FACT

This case is before the Court on Debtor's Motion to Recover Attorneys' Fees (Doc. 754), which spawned from a favorable ruling entered by now retired Judge Mahoney on December 20, 2011, (Doc. 603), wherein she concluded that the IRS failed to prove compelling circumstances demonstrating that an amendment of its claim post-confirmation should be allowed in light of the consent order it signed with Debtor. The Court bases its analysis of whether Debtor may recover attorneys' fees on the position the IRS took before and after that unfavorable ruling.

Judge Mahoney's Order denying the IRS' request to amend, as well as Judge Shulman's Order on Debtor's Objection to IRS Claim, sets out many of the relevant facts necessary for the present determination, and the undersigned relies on those facts as set out therein. (Docs. 603, 895). On March 11, 2009, Debtor filed for Chapter 11 relief, and in December of 2009, after filing several amendments, he filed the final version of his schedules. The IRS filed its first proof of claim on April 26, 2009, which it also amended several times prior to confirmation. At confirmation on December 10, 2010, the IRS reinstated its third amended claim, filed on October 4, 2010, in the amount of $2,020,697.01 in taxes owed. Of that amount, $671,318.55 comprised an unsecured priority claim for income taxes from 2004-2009. (Doc. 603 at 2). The remaining $1,349,378.46 was a general unsecured claim for penalties to the date of the petition for the failure of Debtor to file his tax returns on a timely basis. (*Id.*). Debtor objected to the IRS claim (Doc. 287), and the IRS objected to confirmation, but the IRS agreed to withdraw its objection to confirmation when the Debtor agreed to the Consent Order that resolved issues between the

---

court as proposed findings of fact and conclusions of law in the event the district court concludes that the bankruptcy judge could not have entered a final order or judgment consistent with Article III of the United States Constitution."

4

parties that were not dealt with in the plan. (*Id.*). Debtor's objection to claim remained pending, and Debtor was able to confirm his plan, which became final and was not appealed.

The Consent Order was executed by the parties and signed by the Court on December 17, 2010. It provided:

> 2. The IRS claim totals $2,020,697.01 and consists of unsecured priority tax claims totaling $671,318.55 ("IRS priority tax claims"), and unsecured general claims totaling $1,349,378.46("IRS unsecured general claims").
>
> 3. The IRS priority tax claims of $671,318.55 shall be allowed in full and paid in accordance with the terms of §§ 2.2 and 5.2 of the Confirmed Ohana Cabo LLC's Chapter 11 Plan of Reorganization As Amended ("Plan"). *See* Docs. 462 and 462-1.
>
> 4. The debtor shall preserve his existing objection to the IRS unsecured general claims pursuant to § 6.1 of the Plan, and said claims shall be deemed disputed within the meaning of § 3.2.2 of the Plan until resolution of such disputed claims through either settlement or adjudication to a Final Order (as defined in § 1.18 of the Plan). To the extent such disputed claims become Allowed (as defined in § 1.4 of the Plan), payment of said Allowed claims shall be made in accordance with §§ 3.2.2 and 6.2 of the Plan.
>
> 7. The Plan shall be modified to read, as follows:
> <u>Plan Default Relating to Taxes</u>. Upon any default under the Plan relating to the non-payment of any Administrative Expense, Priority Tax Claims or Unsecured Claim, the administrative collection powers and rights of the United St a t e s shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of Notice of Federal Tax lien and the powers of levy, seizure and sale under Title 26 of the United States Code. *See* Plan, at § 11.9 (formerly § 11.8 (prior to amendment)).

The plan designated a specific amount of priority taxes to pay to state and federal agencies, and the IRS portion of that sum was $671,318.55. (Doc. 603 at 3)(*citing* Plan, § 1.36). On December 27, 2010, the IRS priority tax claim was paid in full, and the sum of $1,349,378.46 was escrowed for the unsecured tax claims according to the IRS final proof of claim once

5

Case 09-11139 Doc 933 Filed 05/27/16 Entered 05/27/16 14:53:02 Desc Main
Document Page 5 of 15

determined. Other creditors were paid millions of dollars at consummation and allowed unsecured claimants, exclusive of the IRS, were paid over $3,000,000. (*Id.*). All of this was done pursuant to the confirmed Plan and Consent Order.

After confirmation, Debtor's objection to the IRS claim was set for hearing. The objection stated that the Debtor objected to "the penalties assessed against him on the ground that Debtor had reasonable cause for not paying the taxes on time." Debtor asserted that, as a Gulf Coast real estate developer, his failure to pay his taxes was due to money problems which arose from Hurricane Katrina, which made it impossible for him to pay on time. (*Id.* at 3-4). In response, the IRS propounded discovery to discern whether Debtor did, in fact, have reasonable cause for failing to pay his taxes. (*Id.*). Through that discovery, the IRS sought income and expenses, and cash flow for the years in question, and, based on Debtor's production, concluded that he may have substantially under-reported his income by millions of dollars for the tax years pending before the Court. (*Id.*). Over the course of this discovery, the IRS filed motions to compel Debtor to comply with its discovery requests and to amend its priority claim to reflect the underreported income. (Doc. 590 Request to Amend). The motions were litigated by the parties, and, on December 20, 2011, the motion to compel was granted on a limited basis, and the motion to amend its priority claim was denied as *res judicata*. (Doc. 603).

The IRS appealed this Court's ruling on the motion to amend to the District Court, which remanded the case to determine whether the Consent Order constitutes an adjudication of the claim of the IRS sufficient to override the *In re Gurwitch,* 794 F.2d 584 (11th Cir. 1986) rationale[2], and whether the tax debt of the debtor that the IRS asserts it is owed, is a tax debt

---

[2] The Eleventh Circuit held that where a debtor owed nondischargeable taxes to the IRS, which were treated under his Chapter 11 plan, the IRS was not barred from collecting those taxes, regardless of whether it filed a proof of claim or whether a plan treating those taxes was

described in Section 523 of the Bankruptcy Code. (Doc. 631). On remand, Judge Mahoney concluded that *Gurwitch* did not apply because the Consent Order, and not the confirmed plan, was the controlling document for purposes of Debtor's tax obligation to the IRS, since the purpose of the Consent Order would be unclear if it was not meant to bind the IRS to its terms. (*See* Doc. 641 at 5). Judge Mahoney likewise held that the Consent Order controlled as to the characterization of the tax debt and the IRS is bound to that characterization. In so ruling, Judge Mahoney denied the IRS' requests to amend it claim and to compel discovery. (*Id.* at 6). The IRS again appealed to the District Court (Doc. 642), raising the question as to whether the Bankruptcy Court abused its discretion by not allowing an amendment to the priority claim after a consent order was entered that disposed of the issue. (Doc. 668). The District Court found that the Bankruptcy Court's application of the law was correct in that *Gurwitch* was not controlling as applied to the facts of this case, and that the Bankruptcy Court did not abuse its discretion in disallowing the amendment to the priority tax claim. (*Id.*).

The IRS appealed the District Court's decision to the Eleventh Circuit Court of Appeals. The appeal was ultimately dismissed with prejudice by stipulation of the parties on April 5, 2013. *See United States of America v. Charles K. Breland,* No. 13-10781-BB. The IRS then filed two motions for partial summary judgment, which were denied by this Court. (Docs. 712, 786). In January of 2015, Debtor filed a motion to deposit funds for payment of the IRS' claim into the Court registry. (Doc. 895 at 3). The Motion also requested other declaratory relief. (*Id.*). The Court granted the request to deposit funds into the Court's registry, but denied the

---

confirmed. By virtue of enacting 11 U.S.C § 523, "Congress has made the choice between collection of revenue and rehabilitation of the debtor by making it extremely difficult for a debtor to avoid payment of taxes under the Bankruptcy Code." *Gurwitch at 585-86*. Thus, the IRS was not barred by *res judicata* or matters of policy in collecting outstanding taxes "whether or not a claim for such tax was filed or allowed," or if a plan treating said taxes was confirmed. *Id* at 586.

7

other declaratory relief. (*Id.*). In March and April of 2015, Debtor made two offers of judgment to the IRS, the first agreeing to pay the funds deposited in the Court registry to settle the disputed general unsecured portion of the IRS' claim, and a second offer agreeing to pay the entire $1,349,378.46 claimed by the IRS. (Doc. 834). Both offers of judgment were made subject to Debtor's motion to recover attorneys' fees and costs. (Doc. 895 at 3.). The IRS refused to respond to the first offer of judgment on the grounds that an offer of judgment was not valid in a contested matter. (*Id.*). The IRS rejected the second offer of judgment and proposed an alternative method to dispose of Debtor's objection, which Debtor, in turn, refused. (*Id.* at 4). On July 31, 2015, Judge Shulman ruled on Debtor's objection to claim allowing the portion of the IRS' amended proof of claim that is attributable to unsecured general claims in the amount of $1,349,378.46, subject to Debtor's right to seek recovery of attorneys' fees and costs and/or offset. (Doc. 895 at 7).

## CONCLUSIONS OF LAW

Congress enacted Section 7430 of the Internal Revenue Code to "deter abusive actions by the [IRS] and to enable taxpayers to vindicate their rights regardless of their economic circumstances." *Cooper v. U.S.,* 60 F.3d 1529, 1530 (11th Cir. 1995). The Eleventh Circuit has held that a corporate debtor in possession in a Chapter 11 proceeding is a proper party to request an award of attorney's fees under 26 U.S.C. § 7430. *In re Brickell Investment Corp.*, 922 F.2d 696, 703 (11th Cir. 1991). Section 7430(a) states,

> **(a) In general.**--In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for--
> **(1)** reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and

> **(2)** reasonable litigation costs incurred in connection with such court proceeding.

26 U.S.C. § 7430.

To recover incurred costs, the taxpayer: (1) must be the "prevailing party," (2) must have exhausted administrative remedies, and (3) must not have protracted the proceedings unreasonably. § 7430. Section 7430(c)(4)(B) provides an exception disallowing the recovery of attorneys fees and costs if the United States establishes that its position was substantially justified. To qualify as a "prevailing party," the taxpayer: (1) must substantially prevail with respect to the amount in controversy or the most significant issue or set of issues presented, and must submit to the court an application for fees and other expenses which shows that the party is the prevailing party, and an itemized statement stating the actual time expended and rate at which fees and other expenses were computed. The taxpayer must also meet the timing and net worth requirements of the first sentence of 28 U.S.C. section 2412(d)(2)(B), incorporated by reference in section 7430(c)(4)(D) and subsection (c)(4)(A)(ii).

Earlier cases interpreting the statute placed the entire burden of proof on the taxpayer to demonstrate that it was the prevailing party, and that the IRS was not substantially justified in its position; however, a 1996 amendment to the statute explicitly placed the burden of proof on the IRS to show whether it was substantially justified in its position. *Ctr. for Family Med. v. U.S.*, 614 F.3d 937, 941 n. 6 (8th Cir. 2010). Thus, the burden of proof is shared by the parties, by the taxpayer on the prevailing party prong, and by the IRS on the substantially justified prong. Notably, a taxpayer may qualify as the prevailing party but still fail to recover his fees and costs if the IRS can prove that it was substantially justified in taking the position it took.

The parties do not dispute, and relevant case law indicates that this Bankruptcy Court is a court of the United States for purposes of this § 7430 analysis. *See In re Abernathy*, 150 B.R.

9

Case 09-11139    Doc 933    Filed 05/27/16    Entered 05/27/16 14:53:02    Desc Main
Document      Page 9 of 15

688, 694 (Bankr. N.D. Ill. 1993); *In re Matthews*, 184 B.R. 594, 602 (Bankr. S.D. Ala. 1995)(citations omitted). The parties also do not dispute that the issues raised herein were for the collection of taxes making it a tax case as contemplated by the statute; and that there were no administrative remedies that Debtor had to exhaust before seeking an award of reasonable litigation costs. The thrust of this issue lies with whether Debtor was a prevailing party and whether the IRS was substantially justified in the position it took regarding Debtor's outstanding and underreported taxes.

First, as to whether Debtor prevailed on the most significant issue in controversy, the Court finds in Debtor's favor. This controversy stems from whether the IRS could amend its claim for taxes owed despite the Consent Order it entered into with Debtor regarding his outstanding taxes. There was extensive litigation over the span of many years to resolve whether the IRS could amend its claim post-confirmation; therefore, this Court finds the IRS' post-Consent Order attempt to amend to be the most significant issue in controversy. This Court and the District Court's multiple rulings in Debtor's favor that the terms of the Consent Order govern the IRS' rights in amending its claim to seek additional sums in contravention of the Consent Order are sufficient for this Court to conclude that Debtor substantially prevailed on the most significant issue in controversy. To completely determine whether Debtor is the prevailing party, the Court must also consider the sufficiency of Debtor's application under the statute. Since this issue of whether the IRS was substantially justified in its position is dispositive of this motion, the Court will not consider whether Debtor's application for fees and other expenses is sufficient as contemplated under this statute, nor will it consider whether Debtor met the net worth requirements incorporated in § 7430.

Regarding the dispute as to whether the IRS was substantially justified in its position as to Debtor's outstanding tax debt, the Court concludes that the IRS has successfully met its burden in demonstrating that it was substantially justified in its position. Section 7430(c)(4) defines "position of the United States" as including "(A) the position taken by the United States in the civil proceeding, and (B) any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administrative action or inaction) upon which such proceeding is based." *Humphreys v. U.S.*, 723 F. Supp. 1421, 1422 (D. Kan. 1989). A position that is "substantially justified" is one that is "justified to a degree that could satisfy a reasonable person" or that has a "reasonable basis both in law and fact." *In re Rasbury*, 24 F.3d 159, 168 (11th Cir. 1994) (*citing Pierce v. Underwood,* 487 U.S. 552, 565 (1988) (defining "substantially justified" in the context of the EAJA)). "The 'not substantially justified' standard was copied by Congress from the EAJA provisions. Thus, where the wording is consistent, courts read the EAJA and § 7430 in harmony." *Kenagy v. United States*, 942 F.2d 459, 464 (8th Cir. 1991)(*citing In re Arthur Andersen,* 832 F.2d 1057, 1060 (8th Cir. 1987; *Powell v. Comm'r,* 791 F.2d 385 391 (5th Cir. 1986); *U.S. v. Balanced Fin. Mgmt., Inc.,* 769 F.2d 1440, 1451 n. 12 (10th Cir.1985)). "The government's position is not substantially justified where it is unreasonable." *Kenagy*, 942 F.2d at 464 (*citing Arthur Andersen,* 832 F.2d at 1060). "Stated another way, the government's position is not substantially justified where its position is not "clearly reasonable, well founded in law and fact, [or] solid though not necessarily correct." *Id.,* (*citing U.S. v. Estridge,* 797 F.2d 1454, 1459 (8th Cir.1986)). The government's position may not be reasonable if it failed to adequately investigate its case or placed unwarranted reliance on biased witnesses. *Id.* Whether the government's position is not substantially justified is necessarily a case-by-case, facts and circumstances determination. *Id.* (*citing Arthur Andersen,*

832 F.2d at 1060; *Keasler,* 766 F.2d 1227, 1237 n. 22 (8th Cir. 1985)). The IRS' position may be incorrect but nevertheless substantially justified "if a reasonable person could think it correct." *Pierce v. Underwood*, 487 U.S. 552, 556 n. 2 (1988).

As stated above, after confirmation of the plan, but before Debtor's objection to the IRS claim was heard, the IRS learned through discovery that for the pre-petition years of 2004-2008, Debtor may have substantially underreported his income by millions of dollars, and that he may owe additional taxes, penalties, and interest for those tax years. (Doc. 912 at 40). Had the IRS not pursued the post-confirmation amendment, it could have been confronted in the Tax Court proceeding with the allegation that it knew about the additional taxes before adjudication of Debtor's objection and could have raised it then. Fearing that such allegation would arise, and that *res judicata* would attach to the non-dischargeable pre-petition 2004-2008 debt if left unaddressed, the IRS believed that it had compelling reasons under relevant law to seek an amendment to its claim to address that debt, regardless of the Consent Order. Thus, without seeking an increase in payment, the IRS sought to amend its claim. When its request to amend was denied, the IRS appealed at every possible juncture to prevent estoppel from attaching and to preserve its right to collect on the non-dischargeable tax debt owed by Debtor.

In the meantime, there were two cases pending before the Eleventh Circuit which would resolve this quandary for the IRS. Those cases were *In re Diaz*, 647 F.3d 1073 (11th Cir. 2011) and *In re Davis*, 481 Fed. App'x 492 (11th Cir. 2012). Both cases, in the vein of non-dischargeable domestic support obligations, applied law regarding statutorily nondischargeable tax debt and concluded that despite a bankruptcy discharge, a creditor governmental agency can later seek collection of outstanding nondischargeable debt without violating the bankruptcy discharge injunction and without *res judicata* attaching.

In *Diaz,* the Eleventh Circuit applied *In re DePaolo,* 45 F.3d 373, 376 (10th Cir. 1995), which stated that "[w]hile principles of *res judicata* apply generally to bankruptcy proceedings, the plain language of the Bankruptcy Code . . . expressly provid[es] that the described taxes are not discharged whether or not a claim for such taxes was filed or allowed . . . . Congress has determined that the IRS may make a claim for taxes for a particular year in a bankruptcy proceeding, accept the judgment of the bankruptcy court, then audit and make additional claims for that same year, even though such conduct may seem inequitable or may impair the debtor's fresh start." *Diaz* at 1091-92. The *Diaz* Court further leaned on *Gurwitch* for the conclusion that "the plain language of the Bankruptcy Code provides that a discharge does not fix tax liabilities made nondischargeable under 11 U.S.C. § 523," thereby allowing for the post-bankruptcy collection of statutorily nondischargeable debt.

Likewise, the Court in *Davis* applied the same concepts set out in *Diaz* and *DePaolo* and concluded that "in the context of nondischargeable obligations, the bankruptcy court's decision as to liability for a debt is really only a decision about whether the nondischargeable debt will be paid by the bankruptcy estate as part of the bankruptcy plan . . . not the total amount of the child-support debt." *Davis*, 481 Fed. Appx. at 495 (citations omitted). The *Davis* Court held that *Diaz* controls, and the principles of collateral estoppel and *res judicata* do not preclude the post-bankruptcy collection of nondischargeable debt. Stated another way, the IRS is entitled to collect the full amount of any statutorily nondischargeable tax debt owed by a debtor regardless of whether the debtor and the IRS consent to a lesser amount during a debtor's bankruptcy case, or whether the IRS even files a claim in a debtor's bankruptcy case. Thus, if a debtor's tax debt is statutorily nondischargeable under § 523, then the IRS is entitled to collect the full amount of that debt regardless of how it is treated in a debtor's bankruptcy case.

Without knowing how the Eleventh Circuit would come down on these issues, and, given that the IRS could have faced serious allegations of laches and/or estoppel if it did not preserve its claim on the nondischargeable tax debt, this Court finds that the IRS' position was substantially justified. A basic understanding of the concept and final effect of *res judicata* indicates that this is not an unreasonable concern to have. Savvy litigants reserve rights and preserve the record on those rights in nearly every type of legal proceeding, including bankruptcy proceedings. Though its position was aggressive, occasionally disrespectful to the Court, and repeatedly ruled incorrect, it was not unreasonable to pursue such an amendment to its claim, or at least attempt to reserve its rights to later pursue in another forum. Attorney Lynne Murphy, counsel for the IRS, stated at the January 2016 hearing that every subsequent motion she filed after her post-confirmation motion to amend was denied was filed for the very purpose of preserving her position of establishing reasonable cause on her motion to amend her claim to add the non-dischargeable tax debt so that estoppel would not attach.

Further bolstering the reasonableness of its position, as soon as the Eleventh Circuit decided *Davis* and resolved the conflict of whether estoppel would attach, the IRS jointly stipulated to dismissing its appeal to the Eleventh Circuit because the issue was moot and no longer in question. This Court concludes that preserving an argument for an appeal, or to be addressed at a later date in another forum is not an unreasonable position to take under these circumstances. In fact, it is quite reasonable.

Therefore, based on the relevant portions of the record and the hearing on Debtor's

Motion to Recover Attorneys' Fees, this Court concludes that the IRS has met its burden in proving that it was substantially justified in its position. Debtor's Motion to Recover Attorneys' Fees (Doc. 754) is hereby DENIED.

Dated: May 27, 2016

/s/ JERRY OLDSHUE
JERRY OLDSHUE
U.S. BANKRUPTCY JUDGE